IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

THOMAS J. BLAKE,

                Plaintiff,

v.                                                       OPINION and ORDER

J. PERTTU, DYLON RADTKE, BRADLEY HOMPE,       21-cv-197-jdp
CINDY O'DONNELL, and KEVIN A. CARR,[1]

                Defendants.

---

Plaintiff Thomas J. Blake, appearing pro se, is a prisoner at Redgranite Correctional Institution. Blake contends that when he was at Green Bay Correctional Institution, Department of Corrections regulations caused him and other prisoners with jobs at the Bureau of Correctional Enterprises textiles shop to be treated worse than other prisoners during a COVID-19 lockdown: other inmates were paid their ordinary wages during the lockdown while textile-shop workers were paid only nominal amounts. Blake brings equal protection claims under the Fourteenth Amendment to the United States Constitution.

The parties have filed cross-motions for summary judgment. Dkt. 23 and Dkt. 29. Because no reasonable jury could conclude that the Department of Corrections wage rules violated the Equal Protection Clause, I will deny Blake's motion for summary judgment, grant defendants', and dismiss the case.

---

[1] I have amended the caption to reflect the spelling of defendants' names as provided in their submissions.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Thomas Blake is currently an inmate at Redgranite Correctional Institution. This case involves events occurring while Blake was housed at Green Bay Correctional Institution (GBCI).

Defendants Dylon Radtke and J. Perttu worked at GBCI: Radtke was the warden and Perttu was the prison's institution complaint examiner. Defendants Kevin A. Carr, Bradley Hompe, and Cindy O'Donnell worked at the Department of Corrections' (DOC) central office in Madison. Carr is the DOC secretary and Hompe and O'Donnell reviewed appeals of inmate grievances.

This case concerns Blake's employment with the Bureau of Correctional Enterprises (BCE), which operates a textile workshop at GBCI employing inmates to assist with production of detention clothing, foam-core mattresses, pillows, linens, and towels, and to assist with embroidery services. BCE was created by the DOC under authority granted to it by the Wisconsin Legislature to "establish industries for the employment of inmates in the state prisons" to manufacture goods or provide services with prices "fix[ed] . . . as near the market price as possible." Wis. Stat. § 303.01(1). BCE inmates "shall be provided with training and work experience that allows them to develop skills necessary to retain employment in outside business and industry." Section 303.01(6). "To the extent possible, prison industries shall be operated in a manner that is similar to private business and industry" and "the primary goal of prison industries shall be to operate in a profitable manner." *Id.*; *see also* Wis. Admin Code DOC § 313.01 ("Purpose") (one of the goals of the BCE program is "[m]aintain[ing] self-sufficiency of the program to the degree possible while maintaining inmate wages based on

2

productivity"). Accordingly, in this program "all inmates . . . shall be paid a wage that is based on the productivity of the work the inmates and residents perform" and "wages shall not be set at a rate such as to cause a deficit on operations." Section 303.01(4).

BCE funds itself with profits from its sales. BCE is operated separately from DOC institutions and has a separate operating budget. GBCI inmates who work for BCE are not employees of the prison itself, but are employees of BCE, and they are subject to different eligibility requirements and employment rules from those applying to inmates with standard institution jobs. In particular, BCE jobs ordinarily pay more than jobs working directly for prisons. Defendants state that BCE jobs are highly coveted among inmates for that reason.

BCE has the authority to lay off inmate workers "when necessary due to business conditions," Wis. Admin. Code DOC § 313.16(1). Common reasons for laying off workers are production slowdowns, state holidays, staffing shortages, and institution lockdowns or inmate-movement restrictions. During a temporary layoff period, BCE inmate workers are paid a nominal wage known as the institution's "involuntary unassigned pay rate" for their regular scheduled hours. *See* Wis. Admin. Code DOC §§ 313.12(4) and 313.16(2). At the times relevant to this case, that rate was five cents an hour. In contrast, inmates who work directly for an institution receive their regular rate of pay during a period that jobs are shut down.

Blake was hired in the BCE textiles shop in July 2019 and he worked there until he left GBCI in January 2021. During the times relevant to this case, Blake earned $0.79 per hour and he worked about 35 hours a week.

In response to a COVID-19 outbreak at GBCI in August 2020, the prion's deputy warden issued an order limiting inmate movement from August 11 to August 21. BCE inmate workers and most institution inmate workers were not allowed to report to work during this

3

time. The BCE textile shop at GBCI was temporarily shut down and BCE inmate workers were temporarily laid off during this movement restriction. Blake received the "involuntary unassigned" five-cent hourly rate during this time.

Blake complained to one of his BCE supervisors, non-defendant Neill Gilbertson, that he was paid only five cents an hour during the temporary layoff. Gilbertson discussed Blake's concern with defendant Warden Radtke, who stated that the DOC would not subsidize the BCE workers during the COVID-19 movement restriction and the BCE workers would be paid involuntary unassigned status pay, in accordance with the Wisconsin Administrative Code and the BCE's handbook.

Blake submitted an inmate grievance contending that he had not been compensated fairly during the 11-day restricted-movement period because non-BCE institution workers were provided their full wages for scheduled hours during that time. Defendants Perttu, Radtke, Hompe, and O'Donnell reviewed Blake's grievance at the various stages of the DOC's grievance process: they dismissed the grievance and Blake's appeal.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Blake contends that his right to equal protection of the laws was violated by prison regulations barring BCE workers from receiving full pay on COVID-19 lockdown while allowing non-BCE prisoner employees to receive full pay during lockdowns. I granted Blake leave to proceed on equal protection claims under the Fourteenth Amendment.

The parries have filed cross-motions for summary judgment. In his summary judgment briefing, Blake seeks to withdraw his claims for money damages against defendants Perttu and

4

Carr. Defendants raise a variety of arguments supporting their motion for summary judgment on the remainder of Blake's claims, but I need not address each argument because I agree with defendants that the wage rules at issue here do not violate the Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV). Blake does not contend that race or another classification subject to heightened scrutiny is at issue, but state actors must still have a rational reason for treating persons differently. This "rational basis" review requires the plaintiff to prove that (1) the state actor intentionally treated plaintiffs differently from others similarly situated; (2) this difference in treatment was caused by the plaintiffs' membership in the class to which they belong; and (3) this different treatment was not rationally related to a legitimate state interest. *Smith v. City of Chicago*, 457 F.3d 643, 650–51 (7th Cir. 2006).

The parties' summary judgment materials show that the material facts are undisputed: BCE employees indeed receive only nominal wages when they are laid off or a job site is shut down, while inmates with standard prison jobs receive their ordinary wages in similar situations. But defendants contend that BCE employees are not similarly situated to prisoners holding standard institution jobs. Blake disagrees, arguing that they are similarly situated to each other because they are all general-population inmates at the same institution. "To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). Although this

5

analysis "is not a precise formula . . . similarly situated individuals must be very similar indeed." *Id.* (internal quotation omitted). The question of whether a comparator is similarly situated is usually a question to be determined by a jury, but summary judgment is appropriate when "no reasonable fact-finder could find that plaintiffs have met their burden on the issue." *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (internal quotation omitted).

Given the undisputed facts here, no reasonable jury could conclude that BCE and non-BCE prison employees are similarly situated. They essentially work for two different employers: employees with standard institution jobs work directly for the prison, and BCE employees like Blake work for a separate for-profit entity. This ordinarily means that BCE uses its profits to pay employees *better* than standard institution workers, and there are stricter eligibility rules for BCE jobs. BCE was created by the DOC under the state legislature's authority to have its own business model and mission: to provide jobs and training in marketable skills for inmates while "maintaining self-supporting industries." The downside to BCE being self-supporting is that it doesn't have the budget to pay inmates when they are laid off. This is materially different from standard institution jobs, which have no profit motive and are paid using the DOC's budget. Because of the substantial differences in the nature of BCE and non-BCE prisoner worker's employment, the Equal Protection Clause does not require them to be treated the same.

But even if I assumed that all GBCI general-population inmates are similar, Blake's claims would fail because the state has a rational basis for treating BCE and non-BCE employees differently. In screening Blake's complaint, I stated that the court often dismisses this type of equal protection complaint because it is obvious that there are legitimate penological interests behind certain prison regulations. Dkt. 10, at 3–4 (citing *Voss v. Carr*,

6

No. 19-cv-790-jdp, 2019 WL 5802556, at *4 (W.D. Wis. Nov. 7, 2019)). But I stated that "it is not obvious what rational basis prison officials would have to continue paying full wages to some idle inmate workers on lockdown but not to others," so I allowed his claims to proceed. *Id.* at 4.

The undisputed facts here provide the state's rational basis: to give inmates marketable skills and experience in something approximating the real-world setting of working for a financially viable business, inmates' wages are tethered to the time they actually spend on the job. "The rationality commanded by the Equal Protection Clause does not require States to match . . . distinctions and the legitimate interests they serve with razorlike precision." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000). A rational-basis claim cannot succeed "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Id.* at 84 (internal quotations omitted). The state's explanation of the BCE layoff rules at issue here is enough to meet the low bar necessary to establish a rational basis for the disparate treatment, because it is plausible that the BCE rules enhance inmates' preparation for eventual outside employment by mimicking how wages work for many employers on the outside: employees are paid only for hours worked.

In his final brief (a reply in support of his own motion and a response to defendants' motion), Blake states that he is "dismissing" his challenge to Wis. Admin. Code DOC Ch. 313 (Prison Industries) because that chapter is "constitutionally sound." Dkt. 39, at 2. He instead focuses on challenging DOC § 309.55, the DOC's general prison-work compensation regulation, which includes a statement that "[t]his section does not apply to corrections industries." Section 309.55(1)(a). But Blake gains nothing by attempting to distinguish exactly

which part of the DOC's employee-pay regulations is unconstitutional. The point of Blake's claims is that BCE and non-BCE employees are treated differently without a rational basis. The regulatory provisions setting forth those difference are in both DOC Chapters 309 and 313, and there are no material dispute over how the wage systems work. The problem for Blake is that the Constitution does not bar the state from treating BCE and non-BCE employees differently.

Blake also argues that the prison was not officially on "lockdown" status because of COVID-19 and he attempts to catch defendants in inconsistencies about which official shut down the BCE workplace and whether BCE was really shut down the entire time that defendants say it was. But I did not grant Blake leave to proceed on claims about prison staff improperly applying internal shutdown rules, nor would it be likely that any such claim could have merit in a lawsuit like this brought under 42 U.S.C. § 1983. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (section 1983 protects plaintiffs from constitutional violations, "not departmental regulations and police practices"). I allowed Blake to proceed only on equal protection claims about the prison paying non-BCE workers their wages during a COVID shutdown while paying BCE workers only a nominal five cents an hour. Because no reasonable jury could conclude that the wage rules here violated the Equal Protection Clause, I will deny Blake's motion for summary judgment, grant defendants', and dismiss the case.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment, Dkt. 23, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 29, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered December 5, 2022.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge